# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF ARKANSAS
# FORT SMITH DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | CASE NO. 2:20-CR-20015-001 |
| | ) | |
| JASON D'JUAN GARFIELD | ) | |

## DEFENDANT'S SENTENCING MEMORANDUM

COMES NOW the Defendant, Jason D'Juan Garfield, by the undersigned counsel, and does hereby respectfully move this Court for a sentence of 37 months in prison. Mr. Garfield submits that an application of the 18 U.S.C. § 3553(a) factors warrants a sentence at the bottom of the guideline range, based upon the following:

## PROCEDURAL BACKGROUND

Mr. Garfield was initially named in a Complaint, charging him with being a prohibited person in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(4) and (8). (Doc. 1). On July 28, 2020, a three-count Indictment was filed, charging him with possession of a machine gun, possession of an unregistered silencer, and possession of a firearm by a prohibited person. (Doc. 16). On August 5, 2020, he waived indictment and pleaded guilty to an Information charging him with the same crimes listed in the Indictment. (Docs. 22 & 23). He has been in federal custody since his arrest on March 12, 2020.

The final Presentence Investigation Report ("PSR") was filed on October 13, 2020. The PSR concluded that Mr. Garfield's total offense level is 21 after a three-level reduction for acceptance of responsibility. (PSR, ¶¶ 100-110). Thus, his guideline range is 37 to 46 months' imprisonment based on a total offense level of 21 and a criminal history category

1

of I. (PSR, ¶¶ 118, 159). The probation officer recommends a departure from the guidelines' range because of aggravating factors that include encouraging a high-school student to take part in acts of violence against minorities. (PSR, ¶¶ 181-182).

Neither the Government nor Mr. Garfield had objections to the PSR. (Doc. 34-1).

## ARGUMENT

I. **Given the Nature and Circumstances of Mr. Garfield's Offense and His History and Characteristics, the Sentence Requested is Sufficient, But Not Greater Than Necessary, to Satisfy the Purposes of Sentencing.**

18 U.S.C. § 3553(a) begins with the mandate that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." These sentencing purposes can be satisfied by sentencing Mr. Garfield to a sentence within the guidelines' range. The probation officer recommends a sentence above the guideline range. However, Mr. Garfield is young, has very little criminal history, and has never been incarcerated before. Therefore, a guideline sentence is an appropriate sentence for this defendant.

   A. <u>Nature and Circumstances of the Offense</u>

Mr. Garfield recognizes that his crimes are serious felonies that involve firearms in connection with racially charged online chats and messaging with other individuals. However, he maintains that he did not intend to harm anyone and that he collected the firearms out of paranoia that someone might harm him. Further, when Mr. Garfield was arrested, he waived his *Miranda* rights and willingly spoke with the agent and was completely truthful about his offense conduct. He explained how he obtained the firearms and how he was able to convert a firearm into a fully automatic gun. Mr. Garfield engaged in dark fantasy in his online chats with others and denies any intention of harming people.

Importantly, Mr. Garfield has mental health issues that contributed to his paranoia, and is in criminal history category I.

      B.  <u>History and Characteristics of the Defendant</u>

Mr. Garfield had an unstable childhood with very little guidance. His childhood was filled with physical, sexual, and emotional abuse. Since birth, his mother informed him that his stepfather was his biological father. Mr. Garfield's stepfather, Jason Garfield, was African American while his biological father was Caucasian. Mr. Garfield struggled with his identity and his place in this world as his confusion grew over the identity of his biological father. Mr. Garfield reports that this caused him a lot of confusion and angst as he attempted to grow into his identity as a white male who was raised to believe he was bi-racial. It appears that his mother's misrepresentation of his birth and parenting contributed to Mr. Garfield's extreme views.

Unfortunately, Mr. Garfield's introduction to a person of color was a negative one—one that permanently imprinted on his young mind. Jason sexually abused Mr. Garfield from age six until he was eight, when he began to fight back. This made Mr. Garfield distrust people, and unfortunately, because of Jason's race, Mr. Garfield attributed negative characteristics to that race. This abuse fueled his extremist views.

After enduring the traumatic abuse of his first stepfather, his mother married Lance Carr. Although Mr. Garfield was hopeful that the new husband would become the father figure he needed, Mr. Carr soon began to sexually abuse Mr. Garfield. This abuse continued until Mr. Garfield was 16 and had the physical stature to defend himself. Mr. Garfield believed that his mother consciously refused to intervene and protect him from the abuse of his stepfathers. Instead, she complained that Mr. Garfield was a burden to

3

her. This was confusing and damaging to Mr. Garfield because his family, the people who were supposed to love him, abused him. He felt a deep disconnect from his own mother, who he believed had allowed his stepfathers to abuse him and who had engaged in prostitution and drug abuse during his childhood. He observed numerous men frequenting their home and found drugs in her room. Mr. Garfield's family struggled financially and he lacked appropriate parenting as a child because all the adults in his life were criminals and the men physically and sexually abused him. As a teen, Mr. Garfield moved out of his mother's home and was essentially homeless, residing with various friends and school mentors at times.

This deeply dysfunctional family dynamic did not provide Mr. Garfield with the stability and guidance he needed. He began abusing alcohol in his preteen years and later dabbled with various illegal drugs. As the Court is aware, substance abuse has a detrimental effect on the developing brain and Mr. Garfield began to abuse alcohol in early adolescence. He had very little supervision and was introduced to pornographic material at age 6.

This lack of love, and the spoken and unspoken messages that he was unworthy of love and protection, made his childhood very difficult and left Mr. Garfield with a deep distrust and anger. He had been beaten down so many times throughout his life that he believed that certain groups were responsible for the wrongs. This pervaded his belief system. His criminal conduct is a direct result of his troubled childhood. Mr. Garfield began frequenting white supremacist political boards as a teenager, which exacerbated his anger towards groups he felt had harmed him in some way. He admits that his statements are inflammatory and outrageous but maintains that he did not intend to harm

4

anyone and that he made these statements to fit in with other white supremacists. While his comments and racially charged dialogue shocks the conscience, Mr. Garfield had not engaged in violence toward any of these groups. While troubling, his rhetoric was his way of venting his frustrations without acting on them. However, Mr. Garfield is very young and people change. During his long period of incarceration at the county jail, he has done some self-reflection and this experience has changed him. He recognizes that he has a need for counseling and therapy that may continue for years.

Mr. Garfield was involuntarily committed to mental health institutions as a teen and was diagnosed with bipolar disorder, schizophrenia, and anxiety disorder. (PSR, ¶¶ 136-143). A psychological evaluation of Mr. Garfield during his present incarceration, conducted by Dr. Sam Wallace, revealed that his childhood was especially traumatic, and that such scores occurred in only 9 percent of the male population sampled. *See* Exhibit "B," p. 10. Dr. Sam Wallace found that Mr. Garfield likely has bipolar disorder and post-traumatic stress disorder ("PTSD"). Dr. Wallace noted that Mr. Garfield's dislike of African American people was shaped by his childhood experiences which engendered hostility toward that race. His treatment by his black stepfather shaped his views in an adverse manner. Dr. Wallace noted that Mr. Garfield's bipolar disorder and PTSD can lead to threats and anger outbursts. These mental health issues could have contributed to his heightened feelings of threats and the need for self-preservation. Dr. Wallace's CV is attached as Exhibit A hereto, and his evaluation report to be filed under seal, as Exhibit B.

Mr. Garfield has a fiancée, with whom he wants to build a future and a family. He has every reason to abide by this Court's orders on supervision after he is released from

prison. He asks this Court to recognize that his current crime is a result of improper guidance and an anger that can be treated. He is young and he still has a lot to offer this world. He recognizes that he owes a duty to his fiancée and to society to learn from his actions and to become a better man. Mr. Garfield recognizes the need to distance himself from certain people and groups and wants to focus on building his new family in ways that will foster a crime-free lifestyle.

Mr. Garfield recognizes that he deserves punishment for his crimes. He asks this Court to consider that he had no intention of harming anyone and to recognize that a poor upbringing had a long-lasting and detrimental effect on the development of his brain and decision making. However, he is not a lost cause and with the proper counseling and treatment, he can be rehabilitated.

### C. Need for Just Punishment in Light of the Seriousness of the Offense

While firearm offenses are extremely serious, Mr. Garfield requests that the Court find that a guideline sentence of 37 months is reasonable under the circumstances of his case. Mr. Garfield's crime was a result of poor decisions he made because of a misguided belief that he should retain a right to bear arms and a paranoia that people were out to harm him. A sentence of 37 months in prison is a significant sentence for someone who is young and has never been incarcerated before.

### D. Adequate Deterrence; Protect the Public

Mr. Garfield recognizes that his firearm offenses and his rhetoric are very serious and that the Court is required to deter him and protect the public. However, Mr. Garfield is in the lowest criminal history category. Recognizing that his crimes are very serious, he is not asking for a below-guideline sentence. His offenses are felonies, which means

he must give up his constitutional right to bear arms upon conviction. For him, that is already an extreme punishment that limits his constitutional freedoms. However, he recognizes that he has committed serious crimes and admitted this to law enforcement very early in the case. He recognizes that he must change his situation and his peer group in order to be productive upon release from prison.

    E. <u>Medical Treatment, Vocational Training, Education, or Correctional Treatment</u>

Mr. Garfield is intelligent and articulate. He has already obtained a high school diploma. He believes that he can be a contributing member of society upon his release and plans to pursue vocational programing, such as welding or other mechanical endeavors, during his incarceration. Further, Mr. Garfield has several mental health needs and will pursue counseling and treatment for bipolar disorder and PTSD in prison. He is committed to healing and a crime-free life upon his release.

    F. <u>The Need to Avoid Unwarranted Sentencing Disparities</u>

In Mr. Garfield's case, a sentence at the bottom of the guideline range would address the goals of sentencing. Mr. Garfield is in the lowest criminal history category, and while the offenses are serious, this is accounted for in the calculated guideline range. He has not committed violent crimes, and even now, his offense was not conducted violently. Thus, Mr. Garfield believes a sentence of 37 months would be sufficient but not greater than necessary to establish the goals of sentencing.

**CONCLUSION**

Mr. Garfield requests a sentence of 37 months, the bottom of the guideline range, based on the 18 U.S.C. § 3553(a) factors. He further requests that this Court recommend that he be placed in a facility close to his fiancée.

WHEREFORE, Mr. Garfield respectfully requests this Court impose a sentence of 37 months, the bottom of the guideline range.

Respectfully submitted,

BRUCE D. EDDY
FEDERAL PUBLIC DEFENDER
WESTERN DISTRICT OF ARKANSAS

By: /s/ *James B. Pierce*
James B. Pierce
Assistant Federal Public Defender
Judge Isaac C. Parker Federal Bldg.
30 S. 6th Street, Room 205
Fort Smith, AR 72901
(479) 782-1097

Counsel for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification to the attorneys of the United States Attorney's Office registered in this case, and I hereby certify that I have mailed the document by the United States Postal Service to the following non-CM/ECF participants: none.

/s/ *James B. Pierce*
James B. Pierce
Assistant Federal Public Defender